**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON**

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

**v.**                              **CRIMINAL NO. 2:21-00127**

**RAYMOND DUGAN,**

       **Defendant.**

### UNITED STATES OF AMERICA'S RESTITUTION MEMORANDUM

       The United States of America, by and through the United States Attorney for the Southern District of West Virginia, hereby submits this *Restitution Memorandum* per this Court's October 27, 2022 Order,[1] and respectfully avers as follows:

1.      On October 20, 2022, the United States filed a *Sentencing Memorandum Regarding Payment of Criminal Monetary Penalties* ("Sentencing Memo").[2] The United States outlined the mandatory restitution the Defendant, Raymond Dugan ("Defendant"), is subject to pursuant to 18 U.S.C. § 2259.[3]

2.      The United States received requests for restitution from the victims of Dugan's criminal conduct totaling $17,000.00.

3.      Through the Defendant's *Sentencing Memorandum*[4] and at the Defendant's sentencing hearing on October 27, 2022, the Defendant informed the United States he objected to the restitution recommended in the Presentence Investigation Report ("PSR").[5]

---

[1] ECF Nos. 118 and 121.
[2] ECF No. 113.
[3] The Defendant stands convicted of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) and notwithstanding section 3663 or 3663A, restitution is mandatory pursuant to 18 U.S.C. § 2259 ("the court *shall* order restitution for any offense under this chapter (sexual exploitation of children)." (emphasis added).
[4] ECF No. 111 at 13.
[5] PSR ¶¶ 113, 125, and 126.

4.     The United States had already identified the Defendant had readily accessible nonexempt assets available to pay the assessments and the proposed restitution ($17,000.00),[6] and the Defendant, through counsel, agreed to immediately pay to the Clerk the total of $22,100.00, to be held in trust until restitution was determined. The Court ordered the Defendant to *immediately* deposit with the Clerk of the Court $17,000.00 on October 27, 2022 for the Clerk to hold in trust.[7]

5.     On October 27, 2022, the Defendant was sentenced to 54 months imprisonment, 5 years of supervised release, a special assessment of $100.00, and a $5,000.00 additional special assessment.[8] The Court deferred restitution to January 12, 2023, with government briefing due no later than December 22, 2022, and the Defendant's response due no later than January 5, 2023.[9]

6.     The Defendant paid the assessments ($5,100.00) on November 15, 2022.[10] To date, the Defendant has not paid the remaining $17,000.00 to the District Clerk.

7.     The Defendant's objection to restitution was that he had "received no documentation in support of restitution."[11] The Defendant has received the restitution claims with supporting documentation from counsel for the respective victims.

8.     On December 21 and 22, 2022, the United States attempted to confer with the Defendant concerning any further objections to the proposed restitution amounts and to date has received no objections. Further on December 22, 2022, the United States requested a status update concerning the deposit of restitution funds with the Clerk and was informed by the Defendant's ex-spouse, Eleanor Triplett, that all of the Defendant's assets had been signed over or otherwise transferred to her by the Defendant.

---

[6] ECF No. 113 at 3–4.
[7] ECF No. 119.
[8] ECF No. 118 and 121.
[9] *Id.*
[10] ECF No. 128.
[11] ECF No. 111 at 13.

9.     The United States has provided the Defendant and his ex-spouse, Eleanor Triplett, until January 2, 2022, to deposit $17,000.00 with the District Clerk before moving to void the transfer/initiating a fraudulent transfer action.

## I.     DEFENDANT'S VICTIMS ARE ENTITLEDTO RESTITUTION UNDER 18 U.S.C. § 2259

The Mandatory Restitution for Sex Crimes section of the Violence Against Women's Act of 1994 [18 U.S.C. § 2259] requires Dugan to pay the victims the "full amount" of their losses including any costs incurred for:

(A) medical services relating to physical, psychiatric, or psychological care;
(B) physical and occupational therapy or rehabilitation;
(C) necessary transportation, temporary housing, and child care expenses;
(D) lost income;
(E) attorneys' fees, as well as other costs incurred; and
(F) any other losses suffered by the victim as a proximate result of the offense.[12]

The Supreme Court in *Paroline v. United States* stated "in this special context, where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images…a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses."[13]  It should not be "severe," but it also cannot be "a token or nominal amount."[14]

Similarly, in *United States v. Dillard*, the Fourth Circuit outlined the district court's authority to order restitution for the "full amount of a victim's losses" under 18 U.S.C. § 2259(b),

---

[12] *See* 18 U.S.C. § 2259.
[13] 134 S. Ct. 1710, 1727-28 (2014). In determining whether a defendant received or possessed a victim's images, the government does not need to prove that an image was actually opened or viewed by the defendant; possession of an image is sufficient. *Paroline*, 134 S. Ct. at 1727; *United States v. Miner*, 617 F. App'x 102, 103 (2d Cir. 2015); *United States v. Reynolds*, CRIM 12-20843, 2014 WL 4187936, at *5 (E.D. Mich. Aug. 22, 2014), *aff'd*, 626 F. App'x 610 (6th Cir. 2015); *United States v. Hernandez*, 2014 WL 2987665, at *5 (E.D. Cal. July 1, 2014); *United States v. McIntosh*, No. 4:14CR28, 2014 WL 5422215, at *5 (E.D. Va. Oct. 22, 2014).
[14] *Paroline* at 1727 (emphasis added).

leaving the district court the authority to determine those losses.[15] Of note, the Fourth Circuit found that the district court's restitution award of more than the victim and the Government had sought to be within the district court's statutory authority.[16]

In calculating a mandatory restitution award under Section 2259, *Paroline* and *Dillard*, the Court must first determine the amount of the victim's losses caused by the continuing traffic in the victim's images (excluding any remote losses). The court must then set an award of restitution in consideration of factors that bear on the "relative causal significance of the defendant's conduct in producing those losses."[17]

> [The *Paroline* Court] recognized the inherent imprecision of calculating an appropriate amount of restitution in cases involving non-contact victims of child pornography and it provided courts with guidance on how to undertake their statutory duty:
>
>> [A] court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses. This cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment. But that is neither unusual nor novel[.]
>
> 134 S. Ct. at 1727-28. This approach does not require a "precise algorithm for determining the proper restitution amount." *Id.* at 1728. Instead, "district courts might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images" and "then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses." *Id.*[18]

The *Paroline* Court suggested, but did not require, consideration of the following "rough guideposts" which "need not be converted into a rigid formula:"[19]  These guideposts include:

1. the number of past criminal defendants found to have contributed to the victim's general losses;
2. reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;

---

[15] 891 F.3d 151, 158 (4th Cir. 2018).
[16] *Id*.
[17] *Paroline* at 1728.
[18] *Dillard* at 160.
[19] *Paroline* at 1728.

3. any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);
4. whether the defendant reproduced or distributed images of the victim;
5. whether the defendant had any connection to the initial production of the images;
6. how many images of the victim the defendant possessed;
7. and other facts relevant to the defendant's relative causal role.

Factor 1 is not entitled to significant weight in determining restitution. Included in this raw number are defendants who might have distributed, trafficked, or produced the victim's images and who therefore have greater responsibility for their losses; indigent defendants who were ordered to pay restitution and who are making only nominal payments; defendants who were ordered to pay restitution and have subsequently died; relatively wealthy defendants who successfully appealed their restitution orders and will therefore pay nothing; defendants who possessed the victim's images but who were never ordered to pay restitution even though the victim's was designated as a victim in their case; and defendants who were allowed to plead guilty to counts which exclude the victim's as victims even though their related conduct or dismissed charges "contributed to the victim's general losses."

Factors 2 through 3 are problematic and should be given little weight, because it is almost impossible to realistically estimate without resorting to unbridled speculation. Peer-to-peer file sharing (commonly called "P2P") is "widely used to download child pornography."[20]  Two recent law enforcement initiatives "identified over 20 million unique IP [Internet Protocol] addresses offering child pornography over P2P networks from 2006 to August 2010."[21]  The ease with which child pornography can now be downloaded creates "an expanding market for child pornography

---

[20] U.S. Sentencing Commission, Report to the Congress: Federal Child Pornography Offenses 51 (2012).
[21] *Id*. at 51-52.

[that] fuels greater demand for perverse sexual depictions of children, making it more difficult for authorities to prevent their sexual exploitation and abuse."[22]

In other words, Dugan is just one of many virtually unknown and unknowable cogs in the vast machinery that sexually abuses and exploits children through child pornography. To the extent Dugan wants to argue that the number of other cogs in that machinery are some sort of mitigating factor, he should be required to prove it. Defendants generally must "prove that ameliorating sentencing provisions apply to them."[23]  If Dugan wants to hide in a larger crowd, he should have to prove the size of that crowd.

Most district courts have rejected significant reliance on these factors finding them especially difficult to predict because of the proliferation of images and videos. Confronted with a restitution case post-*Paroline*, the United States District Court for the Eastern District of California declined to apply this optional factor. *See United States v. Watkins*, 2:13–CR–00268, 2014 WL 3966381, at *7 (E.D. Cal. Aug.13, 2014). *See also Reynolds*, No. CRIM 12-20843, 2014 WL 4187936 at *6 ("Frankly, these two suggested factors strike this Court as incredibly speculative—this Court questions how you could ever have reasonable or reliable estimates of the above"); *United States v. Crisostomi*, 31 F.Supp.3d 361, 364 (D. Rhode Island 2014) ("How is a district judge to make a 'reliable estimate of the broader number of offenses involved' when even the U.S. Supreme Court admits parenthetically that 'most of whom will, of course, never be caught, or convicted?' *Paroline*, 134 S. Ct. at 1728. It appears to this Court that some of the factors the Supreme Court suggests be considered are at best difficult, and at worst impossible to calculate in this case as in most similar cases"); *United States v. McIntosh*, No. 4:14CR28, 2014 WL 5422215,

---

[22] *United States v. Reingold*, 731 F.3d 204, 217 (2d Cir. 2013).
[23] *United States v. Nania*, 724 F.3d 824, 833 (7th Cir. 2013).

at \*6 (E.D. Va. Oct. 22, 2014) ("this factor is especially difficult to predict because of the proliferation of Vicky's images and videos").

A defendant who reproduces or distributes images might be responsible for a much greater portion of a victim's losses than a defendant who views and possesses a victim's images. The Seventh Circuit held that child pornography distributors are liable to pay restitution for all of a child pornography victim's losses because it is impossible to determine what part of the losses each distributor caused.[24] A distributor of a child pornography image "may upload it to the Internet; dozens or hundreds of consumers of child pornography on the Internet may download the uploaded image and many of them may then upload it to their favorite child-pornography web sites; and the chain of downloading and uploading and thus distributing might continue indefinitely."[25] Given the Supreme Court's limitation in *Paroline* to "this special context" of possession, evidence of distribution should result in much greater restitution awards up to and including all of a victim's losses as outlined in *Laraneta*.[26]

Finally, the one truly knowable factor is the number of images of the victim Dugan possessed. Unlike many of the other *Paroline* factors, the number of images is easily determined and factually detailed in every case. The number of images possessed by Dugan is also an accurate indication of how "exposed" the victim was to an individual defendant and how much of a victim's privacy and dignity was exploited in a case. *See McIntosh*, No. 4:14-CR-28, 2014 WL 5422215, at \*7 (this Court finds that an increase in the restitution award based on this factor is proper).

Here, Dugan possessed at least 1,237 images containing child pornography some of which involved the depictions of prepubescent minors and material involving sadistic and machoistic

---

[24] *United States v. Laraneta*, 700 F.3d 983, 991-92 (7th Cir. 2012).
[25] *Id*. at 992.
[26] *Id*.

conduct or other depictions of violence.[27]  Of the victim requests received by the United States, the following number of images of each victim were in the possession of Dugan, and each victim has provided notice of his or her loss concerning restitution and supporting documentation.

| Victim | No. of Images of Victim in Defendant's Possession | Restitution Amount |
|---|---|---|
| Victim No. 1 | 113 | $3,000.00 |
| Victim No. 2 | 18 | $4,000.00 |
| Victim No. 3 | 1 | $10,000.00 |

The total number of identified victims in Dugan's possession is 42 and the total amount of restitution sought by his victims is **$17,000.00**. The United States respectfully requests the Court enter an Order for restitution concerning the victims in this case as outlined in the attached revised Exhibit A, filed under seal.

One final factor for the Court's consideration—section 2259 specifically and very clearly provides that "the economic circumstances of the defendant" shall not preclude entry of a restitution order.[28] This provision is consistent with the overall thrust of this statute favoring compensation to victims and recognizing the devastating effect of the violation upon the victim. Further, in § 3664(f)(1)(A) Congress has directed that "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." It is only as to the manner of payment (i.e., the payment schedule) that the statute allows the court to consider the defendant's financial resources.[29]

---

[27] PSR ¶¶ 10–12.
[28] 18 U.S.C. § 2259(b)(4)(B).
[29] 18 U.S.C. § 3664(f)(2).

### A.  Restitution to Victim No. 1

The United States received a restitution request from Victim No. 1's representative in the amount of $3,000.00. Victim No. 1's representative provided documentation concerning Victim No. 1's losses in excess of $7,000,000.00 consisting of treatment and evaluation expenses. Victim No. 1's expenses are ongoing. Dugan possessed 113 files of Victim No. 1. A copy of Victim No. 1's restitution request and supporting documentation were provided to the Probation Office and can be provided to the Court for review *in camera*. Victim No. 1's apportioned request for $3,000.00 in restitution represents less than 1% of Victim No. 1's ongoing loss. The United States requests the Court enter an order for $3,000.00 in restitution to Victim No. 1.

### B.  Restitution to Victim No. 2

The United States received a restitution request from Victim No. 2's representative in the amount of $4,000.00. Victim No. 2's representative provided documentation concerning Victim No. 2's losses consisting of treatment and evaluation expenses. Victim No. 2's expenses are ongoing. Dugan possessed 10 files of Victim No. 2. A copy of Victim No. 2's restitution request and supporting documentation were provided to the Probation Office and can be provided to the Court for review *in camera*. The United States requests the Court enter an order for $4,000.00 in restitution to Victim No. 2.

### C.  Restitution to Victim No. 3

The United States received a restitution request from Victim No. 3's representative in the amount of $10,000.00. Victim No. 3's representative provided documentation concerning Victim No. 3's losses in excess of $1,000,000.00 consisting of treatment and evaluation expenses. Victim No. 3's expenses are ongoing. Dugan possessed one file of Victim No. 3. A copy of Victim No. 3's restitution request and supporting documentation were provided to the Probation Office and

can be provided to the Court for review *in camera*. Victim No. 3's apportioned request for $10,000.00 in restitution represents less than 1% of Victim No. 3's ongoing loss. The United States requests the Court enter an order for $10,000.00 in restitution to Victim No. 3.

## II.     THE GOVERNMENT HAS MET ITS BURDEN OF PROOF

The United States has made a showing sufficient for the Court to make a restitution determination. The evidence submitted by the United States provides sufficient support to justify the restitution amount by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e) (stating that the government bears the burden of proving the amount of a victim's losses); *United States v. Lewis*, 235 F.3d 215, 218 (4th Cir. 2000) (noting that "while facts necessary for conviction must be proved beyond a reasonable doubt in order to satisfy the requirements of due process, facts relevant to a sentencing determination need only be proved by a preponderance of the  evidence"). Also, "[t]he burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *United States v. Manigan*, 592 F.3d 621, 631 (4th Cir. 2010) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)).

A sentencing court is afforded wide latitude in evidentiary matters and "may consider relevant information without regard to its admissibility under the rules of evidence" so long as "the information has sufficient indicia of reliability to support its probable accuracy."[30] It has been consistently held that consideration of victim impact statements is appropriate, as the rules of evidence do not apply to sentencing hearings, and the confrontation clause does not prevent the

---

[30] U.S.S.G. § 6A1.3; *see also United States v. Riccio*, 529 F.3d 40, 47 (1st Cir. 2008) ("At sentencing, the district court is not directly bound by ordinary rules of evidence…[and] has broad discretion to accept even hearsay evidence at sentencing as long as the court concludes, with proper support, that the information has sufficient indicia of trustworthiness to warrant a finding of probable accuracy" (internal citations omitted)); *United States v. Leekins*, 493 F.3d 143, 150 (3d Cir. 2007) ("[A] District Court may 'credit hearsay evidence over sworn testimony, especially where there is other evidence to corroborate the inconsistent hearsay statement.'") (quoting *United States v. Miele*, 989 F.2d 659, 664 (3d Cir. 1993)).

introduction of hearsay testimony.[31] Courts have held that hearsay statements, including victim impact statements, must have some "minimal indicium of reliability beyond mere allegation."[32] The court is also entitled to adopt the summary of the victim's statement and the findings in the PSR without further inquiry or testimony from the victim, provided the facts have an adequate evidentiary basis and defendant fails to rebut the preponderance of evidence.[33]

Each restitution request is supported by a victim impact statement, medical reports, which include calculations for future treatments and treatments already provided, a *curriculum vitae* of the evaluator, and a letter from the victim's representative summarizing the victim's request.

Once, as here, the government had met its burden of proof, the burden shifts to the defendant to rebut the evidence. The Defendant has received an opportunity to refute the United States' assertions through the exchange of briefs regarding the restitution award. The Defendant also has the opportunity to call his own experts and to subpoena the victims'.

## III.     THE HARM CAUSED BY THE DEFENDANT IS COMPENSABLE

### A.  There is No Proximate Cause Requirement Under 18 U.S.C. § 2259

The language of 18 U.S.C. § 2259 compels this court to award the Defendant's victims restitution for losses specified in the statute, and for unspecified losses suffered as a "proximate result" of the Defendant's offense. The words "proximate cause" do not appear anywhere in 18 U.S.C. § 2259. Instead, Section 2259 mandates restitution for "victims," defined simply as persons "harmed as a result of a commission of a crime under this chapter."[34] The omission of the term constitutes a striking contrast to the general restitution statute, which defines a victim as "a person

---

[31] *See* Fed. R. Evid. 1101(d)(3).
[32] *United States v. Kikumura*, 918 F.2d 1084, 1102 (3d Cir. 1990) (opinion vacated on other grounds in *United States v. Grier*, 475 F. 3d 556 (3d Cir. 2007). *See also* U.S.S.G. § 6A1.3(a) (at sentencing, "the court may consider relevant information . . . provided that [it] has sufficient indicia or reliability to support its probable accuracy").
[33] *United States v. Smith*, 528 F.3d 423, 425 (5th Cir. 2008) (rejecting defendant's argument that "the government was required to present live testimony or a sworn affidavit from the victim at the sentencing hearing").
[34] 18 U.S.C. § 2259(c).

directly and proximately harmed as a result of the commission of an offense."[35]  "Proximate cause" is not part of the definition of who should receive restitution. Rather, it is a test for certain types of losses. Consequently, if a person is a "victim" within the meaning of Section 2259(c), then he or she is entitled to the "full amount" of his or her losses, which may include any costs incurred for "[a]ny other losses suffered by the victim as a *proximate result* of the offense."[36]  A faithful reading of the statute leads to the conclusion that victims who are harmed by a defendant's offense – whether proximately or otherwise – are entitled to compensation for any of the losses specified in 18 U.S.C. § 2259(b)(3)(A)-(E), and for unspecified losses suffered as a "proximate result" of the offense pursuant to 18 U.S.C. § 2259(b)(3)(F). In other words, after a person is determined to be a "victim," that person need only demonstrate that his or her loss proximately resulted from the defendant's offense if he or she is seeking compensation for a loss not specifically enumerated. This interpretation is consistent with the statute's plain language and the broad remedial purpose Congress intended.[37]

The identified individuals *are* victims of the Defendant's crimes because the possession of their images violate their right to privacy and their individual interest in disclosure of private matters, contributes to an ongoing cycle of abuse, and perpetuates a market for the sharing of the material. Therefore, as victims, the identified individuals are automatically entitled to restitution for losses incurred under 18 U.S.C. § 2259(b)(3)(A)-(E), which carry no proximate cause requirement. The government recognizes, however, that courts that have analyzed restitution claims have determined that there is such a proximate cause requirement.[38] Even if this court

---

[35] 18 U.S.C. § 3663(a)(2).

[36] *See* 18 U.S.C. § 2259(b)(3) (emphasis added).

[37] *Compare* 18 U.S.C. § 3663 (allowing the court to take into consideration defendant's financial means) *with* 18 U.S.C. § 2259 (denying the court such discretion where restitution to victims of child exploitation crimes is at issue).

[38] *See. e.g., United States v. Brunner*, No. 5:08cr16, 2010 WL 148433, at *2 (W.D.N.C. Jan. 12, 2010) (awarding restitution because defendant's receipt and possession of pornographic images of minors was a proximate cause of their injury); *United States v. Searle*, 65 F. App'x 343, 344-345 (2d Cir. May 6, 2003) (assuming that Section 2259

requires such a showing, the victims are still entitled to restitution because the Defendant's offense proximately caused their injuries.

## B.  The Defendant's Crimes Proximately Caused the Victims' Injuries

As evidenced by their own words and the opinions of the psychologists and other experts, the Defendant's possession of the victims' images proximately causes them harm. As previously noted by the government, Section 2259 is phrased in "generous" and "broad" terms to compensate sexual exploitation victims for the full amount of their losses, and courts have thus refrained from imposing a causation requirement approaching "mathematical precision." [39] To the contrary, circuit courts have upheld restitution orders as long as the amount of the victim's losses were calculated with "reasonable certainty." *Doe*, 488 F.3d at 1161 (finding that the district court did not abuse its discretion in finding that the medical expenses incurred by the victims were "reasonably related" to the defendant's criminal conduct and, "the additional strain or trauma stemming from [defendant's] actions was a substantial factor in causing the ultimate loss." [40] Courts have also been willing to order restitution for the full amount of the victims' losses even

---

includes a requirement that the victim's losses be suffered as a proximate result of the offense); *United States v. Crandon*, 173 F.3d 122, 125 (3d Cir. 1999) (finding that "[t]he mandatory restitution provision of the Protection of Children Against Sexual Exploitation Act requires awarding the full amount of the victim's losses suffered as a proximate result of the offense"); *In re: Amy*, 591 F.3d 792, 794 (5th Cir. 2009) (stating that "[c]ourts across the country have followed and applied the proximate cause requirement in imposing restitution under Section 2259"); *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999) (holding that Section 2259 "incorporates a requirement of proximate causation").

[39] *United States v. Doe*, 488 F.3d 1154, 1159-1160 (9th Cir. 2007); *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001); *Crandon*, 173 F.3d 122, 126 (3d Cir. 1999).

[40] (citation omitted)); *Laney*, 189 F.3d 954, 967 n.14 (9th Cir. 1999) (upholding the district court's restitution award because it was a reasonable estimate and was not based on arbitrary calculations).

when the defendant's conduct was not the sole cause of the harm.[41] The Fourth Circuit has also not employed a formalistic causation analysis.[42]

Historically, many courts imposed restitution under Section 2259 in cases where the defendant sexually abused the child victim and/or participated in the production of child pornography in which the child victim was depicted.[43] A defendant convicted of a child exploitation charge is not absolved of responsibility to pay restitution simply because he or she did not participate in the original sexual abuse, production, or initial distribution of child pornography, and courts have concluded that possession, receipt, and/or distribution of child pornography is a proximate cause of injury to the victims.[44]

---

[41] *See, e.g., Crandon*, 173 F.3d at 126 (rejecting defendant's arguments that his sexual exploitation and abuse offenses could not be the proximate cause of the victim's losses because she may have suffered from preexisting psychological problems when it was reasonable to conclude that defendant's conduct was a substantial factor in causing the total loss); *United States v. Hackett*, 311 F.3d 989, 993 (9th Cir. 2002) (holding that proximate causation can exist where there are "multiple links in the causal chain"); *United States v. De La Fuente*, 353 F.3d 766, 772 (9th Cir. 2003) (noting the Court's past approval of restitution awards that "included losses at least one step removed from the offense conduct itself").

[42] *See, e.g., Brunner*, No. 5:08cr16, 2010 WL 148433, at *1.

[43] *Doe*, 488 F.3d 1154, 1160-1162 (upholding a $16,475.00 restitution order compensating eight victims for future expenses, including two years of counseling, alternative education programs, vocational training, and a case management fee where defendant was convicted of producing child pornography and engaging in illicit sexual conduct with minors in foreign places); *Searle*, 65 F. App'x 343, 344-347 (2d Cir. 2003) (upholding a $17,582.85 restitution order compensating victims' guardians for counseling, transportation to counseling, the cost of remodeling their home to accommodate the victims, and some of the cost of a vehicle purchased when custody of the victims was transferred to the guardians where defendant was convicted of receiving and producing child pornography); *United States v. Julian*, 242 F.3d 1245 (10th Cir. 2001) (finding that child victims were entitled to restitution for past medical and counseling expenses, and future counseling or treatment costs, where defendant was convicted of sexual abuse, sexual exploitation, and conspiracy to commit offense, or to defraud the United States); *Danser*, 270 F.3d 451, 455 (upholding a $304,200.00 restitution order compensating the victim for the anticipated costs of future therapy where victim's father was convicted of improper sexual contact); *Laney*, 189 F.3d 954, 964-967 (upholding a $60,000 restitution order where defendant was convicted of conspiracy to sexually exploit children in violation of §§ 2251 and 2252, and distribution of visual depictions of minors); *Crandon*, 173 F.3d 122, 125-126 (upholding a $57,050.96 restitution order compensating the victim for medical expenses where defendant was convicted of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2), but facts show defendant also participated in the production of the images); *United States v. Estep*, 378 F. Supp. 2d 763, 770-774 (E.D. Ky. 2005) (ordering $221,480.10 in restitution to three child victims of sexual abuse and exploitation); *United States v. Croxford*, 324 F. Supp. 2d 1230, 1249 (D. Utah 2004) (ordering the defendant to pay $79,968.00 to victim where defendant (the victim's adoptive father) was convicted of sexual exploitation of a child under 18 U.S.C. § 2251(a)).

[44] *See, e.g., United States v. Goff*, 501 F.3d 250, 259 (3d. Cir. 2007) (stating that "consumers "who 'merely' or 'passively' receive or possess child pornography directly contribute to this continuing victimization").

Many courts have determined that victim impact statements and psychological evaluations provide a sufficient basis to hold that defendant's conduct in possessing, distributing, or receiving images is a proximate cause of the victim's harm.[45] In this case, the victim impact statements describe how the Defendant's possession and use of their abuse photos make them feel.

Victim No. 1:

> I worry about the pictures of me that are out there and I hate that others see them. I have feared over the years that someone would recognize me in public. I wish only that every single one can be found and destroyed someday. . . . I went to therapy for a while but I stopped because I just want to forget it. With the pictures still out there I can't.[46]

---

[45] *See United States v. Hardy*, 707 F. Supp.2d 597 (W.D. Pa. 2010) (concluding that psychologist's consult "draws a connection between [the victim's] knowledge that the images are circulating on the internet and her ongoing psychological condition"); *Brunner*, No. 5:08cr16, 2010 WL 148433, at *2 (concluding that defendant's possession of victims' images was a proximate cause of their injuries because the specific harm to the victims was "well-documented by the victim impact statement and psychological reports" submitted by the government in support of restitution); *United States v. Hicks*, No. 1:09-cr-150, 2009 WL 4110260, at *4 (E.D. Va. Nov. 24, 2009) (resting its finding that defendant's attempt to receive pornographic images depicting the victim's abuse "presented a sufficiently proximate tie to her ongoing injuries to justify an award of restitution under Section 2259" on the fact that "Vicky, and those closest to her attest, first-hand, to the ongoing trauma she suffers each time the Vicky series is traded and viewed"); *Crandon*, 173 F.3d 122, 126 (finding the proximate cause requirement satisfied by a report submitted by the victim's psychiatrists stating that the defendant's acts "exacerbated" her depression). *But see United States v. Church*, No. 701 F. Supp. 2d 814, 832 (W.D. Va. 2010) (concluding that materials submitted, including a victim impact statement and a psychological report, "do not suggest, much less do they provide a basis for the Court to establish as fact, that the victim has suffered any particular loss as a result of this particular defendant's possession of her image"); *United States v. Patton*, No. CR. 09-43, 2010 WL 1006521, at *2 (D. Minn. Mar. 16, 2010) (stating that "[d]espite the materials submitted, the Court is without evidence demonstrating what portion of those damages are causally connected specifically to [Patton's] offense"); *United States v. Van Brackle*, No. 2:08- CR-042-WCO, 2009 WL 4928050, at *4 (N.D. Ga. Dec. 17, 2009) (concluding that victim impact statement and expert reports did not constitute evidence that would allow the court to estimate "with reasonable certainty" the harm proximately caused by defendant's receipt of their images); *United States v. Berk*, 666 F. Supp. 2d 182, 191 (D. Me. 2009), *as amended* (Oct. 29, 2009) (finding nothing in the record that demonstrates that the victims suffered a specific loss proximately caused by this particular defendant's possession of their images and noting the absence of any mention of his name in the supporting documentation); *United States v. Woods*, 689 F. Supp. 2d 1102, 1112 (N.D. Iowa 2010) (concluding that the government failed to meet its burden because the psychological report did not identify any particular loss attributable to defendant's possession of the images); *United States v. Paroline*, 672 F. Supp. 2d 781, 792 (E.D. Tex. 2009), *vacated sub nom. In re Unknown*, 697 F.3d 306 (5th Cir. 2012), and *vacated sub nom. In re Amy Unknown*, 701 F.3d 749 (5th Cir. 2012), and *vacated and remanded sub nom. In re Unknown*, 754 F.3d 296 (5th Cir. 2014) (finding no proximate cause when the losses described in the reports submitted by the victim were "generalized" and made no effort to show what portion of the losses were attributable to defendant's possession of the images).

[46] Victim No. 1, Victim Impact Statement at 14.

Victim No. 2:

> [T]he first time I learned that the explicit photographs that [redacted] took of me and my co-survivor were being circulated on child pornography websites . . . . I was shocked and appalled. I felt like I was going to vomit. It was like a scab that is trying to heal being torn off—raw, pounding pain. . . . I thought that my photographs had been destroyed after [redacted] was convicted in the mid-1970s. I was shocked and felt betrayed. It was then that I realized that this nightmare never went away at all, and this scary reality replays in my mind, as hundreds of perpetrators all across the world have continued access to *my* body whenever they want it. These uncontrollable thoughts send my mind racing, and they keep me awake late at night and in the early morning hours. . . .

> But it's not just [redacted] harming me . . . nearly five decades after he sexually exploited us. There are now people all over the world looking at photographs of my raw, exposed ten-year-old body. How unthinkable that images of exploited children would be used to satisfy some sick-minded individuals. Every time someone looks at one of these pictures, even if I don't feel the harm in real time, the knowledge that the photographs are out there is killing me. I can't control these perpetrators' access to my images, and these viewers propel the child pornography industry. As long as there is a *need* for people to view child pornography, I'm in danger. Do these individuals realize that their desires fuel the flames for other children to be harmed?

> I wonder if they ever think about me while viewing and downloading these images. Do they know how much their actions continue to shape my life? The loneliness I feel, the shame I feel, how I've viewed men throughout my life, my continued struggles, the drinking and drug use, the decision not to finish my education. These people are viewing a damaged person who took years to try to heal herself. The news that my pictures still exist caused a rush of insecurity to come over me all over again.[47]

Victim No. 3:

> I was filmed, photographed and exploited so others could watch. The person who did this to me made it so that not only could he get what he wanted, but so that other pedophiles could share and extend my abuse and rape. They share photos and videos of me, sell them, and keep a succession of my torture going on forever. It never ends.

---

[47] Victim No. 2, Victim Impact Statement at 3–4.

It is never over. It keeps coming back, day after day, year after year, and I can never escape it.

I have to deal with this on a daily basis. Nobody whose images of their rape and torture are on the internet can live normally again. . . .

Having photos and videos on the internet is sickening. You don't know who has seen them when someones eyes wander too long it's hard not to wonder if they recognize me. Having these images and videos out there for anyone to see makes me wonder all the time who has witnesses my abuse and rape and did nothing but keep and share it. . . .

I have hundreds of notices of people who have been arrested with disgusting pictures of me, pictures created for other perverts. . . . The biggest horror to me is if someone were to be caught with images of me and not be convicted or locked up. I fear that the pedophiles who are searching for and finding my images might not be satisfied with looking at what happened to me . . .[48]

As all of the victims described, the hard to them is derived not just from their original perpetrator's abuse, but from their fear that they might unknowingly encounter someone who has downloaded or seen their images. It also derives from the harm to their dignity and privacy that occurs when they learn that a defendant has viewed those images, memorializing the sexual abuse they suffered as children. The materials furnished by the government demonstrate the harm proximately caused to the victims by the Defendant's possession of their images, and an award of restitution is appropriate under Section 2259.

## CONCLUSION

WHEREFORE, based on the above authority and arguments, the United States has satisfied its burden by demonstrating the amount of the victims' losses by a preponderance of the evidence, and respectfully requests that the Court order full restitution to the victims identified in the

---

[48] Victim No. 3, Victim Impact Statement.

Presentence Report, in the total amount of $17,000.00,[49] with the conditions outlined in its *Sentencing Memo* pursuant to its authority under 18 U.S.C. §§ 3572 and 3664(f). A revised proposed restitution chart has been filed under seal in compliance with Crime Victim Rights Act, 18 U.S.C. § 3771(a)(8).

<div style="margin-left: 40%;">

Respectfully submitted,

WILLIAM S. THOMPSON
United States Attorney


***s/ Jessica A. Nathan***
JESSICA A. NATHAN
Assistant United States Attorney
WV State Bar No. 13994
United States Attorney's Office
300 Virginia Street, East, Room 4000
Charleston, WV   25301
Phone: 304-345-2200 | Fax: 304-347-5440
Email: Jessica.Nathan@usdoj.gov
*Counsel for United States of America*

</div>

---

[49] The United States has provided the Defendant and his ex-spouse, Eleanor Triplett, until January 2, 2022, to deposit $17,000.00 with the District Clerk before moving to void the transfer/initiating a fraudulent transfer action

## <u>CERTIFICATE OF SERVICE</u>

I, Jessica A. Nathan, Assistant United States Attorney for the Southern District of West Virginia, do hereby certify that the foregoing ***United States of America's Restitution Memorandum*** was electronically filed with the Clerk of the Court using the CM/ECF system which will electronically notice counsel of record.

Dated:   December 22, 2022

> **s/ Jessica A. Nathan**
> Assistant United States Attorney
> WV State Bar No. 13994
> United States Attorney's Office
> 300 Virginia Street, East, Room 4000
> Charleston, WV   25301
> Phone: 304-345-2200 | Fax: 304-347-5440
> E-Mail: jessica.nathan@usdoj.gov
> *Counsel for United States of America*