IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

_____
                                  x
UNITED STATES OF AMERICA,      : Criminal Action
                               :
            Plaintiff,         : No. 2:21-cr-00127
                               :
v.                             :
                               :
RAYMOND DUGAN,                 :*** **REDACTED** ***
                               :
            Defendant.         : **APPEAL TRANSCRIPT**
_____  x

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE JOSEPH R. GOODWIN
UNITED STATES DISTRICT COURT JUDGE
IN CHARLESTON, WEST VIRGINIA
OCTOBER 27, 2022

APPEARANCES:

For the Government:        Julie White, Esq.
                          Assistant United States Attorney
                          United States Attorney's Office
                          P.O. Box 1713
                          Charleston, WV  25326-1713

For the Defendant:        David Schles, Esq.
                          Suite 306
                          815 Quarrier Street
                          Charleston, WV 25301

Probation Officer:        Kiara Carper

_____
Kimberly Kaufman, RMR, CRR, CRC
Federal Official Court Reporter
300 Virginia Street East, Room 6610
Charleston, WV 25301

Proceedings recorded by mechanical stenography; transcript produced by computer.

1          PROCEEDINGS had before The Honorable Joseph R.

2    Goodwin, Judge, United States District Court, Southern

3    District of West Virginia, in Charleston, West Virginia, on

4    October 27, 2022, at 10:00 a.m., as follows:

5               THE COURT:  Good morning.

6               THE COURTROOM DEPUTY CLERK:  The matter before the

7    Court is *The United States of America v. Raymond Dugan*,

8    Criminal Action No. 2:21-cr-127.

9               THE COURT:  Is the United States ready?

10              MS. WHITE:  Yes, Your Honor.

11              THE COURT:  Is the defendant ready?

12              MR. SCHLES:  Yes, Your Honor.

13              THE COURT:  Will the defendant and defense counsel

14   please stand.

15        Madam Clerk, would you administer the oath to

16   Mr. Dugan.

17              **RAYMOND DUGAN, DEFENDANT, SWORN**

18              THE COURT:  Mr. Dugan, on August 2nd, 2022, you

19   were convicted of accessing with the intent to view child

20   pornography in violation of 18 United States Code Sections

21   2252A(a)(5)(B) and (b)(2) as charged in a single-count

22   superseding indictment returned against you by the grand

23   jury.

24        Since the time of your conviction the probation

25   department has conducted a presentence investigation of you

1   and prepared a presentence investigation report.

2      Have you had an opportunity to read that report and

3   discuss it with your lawyer?

4            THE DEFENDANT:  Yes, Your Honor, I have.

5            THE COURT:  Mr. Schles, have you had an

6   opportunity to read it and discuss it with your client?

7            MR. SCHLES:  I have, Your Honor.

8            THE COURT:  Having done so is there any reason why

9   disposition should not take place today?

10           MR. SCHLES:  No, Your Honor.

11     I would bring to the Court's attention that the

12  government and the defense have agreed to ask the Court to

13  defer final decision on the restitution judgment.

14     The agreement is that I was just on Tuesday provided

15  with documentation which is kind of lengthy and complicated.

16     In the interim, Your Honor, Mr. Dugan will deposit with

17  the clerk -- or with the Court the sum --

18     What is it?

19           MS. WHITE:  22,000.

20           MR. SCHLES:  -- $22,000, which would represent the

21  special assessment, restitution and the individual claim of

22  restitution.  If there were to be some adjustment, any

23  balance would be refunded.  Otherwise, that money would be

24  turned in for the restitution, Your Honor.

25           THE COURT:  So insofar as the Court's concerned

1   I'll defer any determination with regard to the matter of

2   restitution to a later date.  And I believe that is

3   permitted.  Otherwise, I'll proceed with sentencing today.

4        Is that agreed?

5            MR. SCHLES:  That is, Your Honor.

6            MS. WHITE:  Yes, Your Honor.

7        Thank you.

8            THE COURT:  All right.  Mr. Dugan, do you

9   understand the contents of that presentence investigation

10  report?

11           THE DEFENDANT:  Yes, Your Honor, I do.

12           THE COURT:  Having reviewed it it appears that the

13  government has no objections, the defendant has four.  I'll

14  deal with the ones I still need to deal with one at a time.

15       The defendant objects to paragraph 96, which includes

16  as a condition of the supervised release that the defendant

17  not view or possess any visual depiction of sexually

18  explicit conduct for the purpose of sexual gratification.

19       Defendant argues that requiring him to refrain from all

20  sexually explicit material is overbroad.

21       Anything further argument from either party?

22           MR. SCHLES:  No, Your Honor.

23       I've set forth in the sentencing memorandum the basis

24  for the objection and also some language that has been used

25  in other cases by courts in recognition of the overbreadth

1    that I believe is reasonable and I ask the Court to adopt

2    that as a condition.

3              THE COURT:  Say again.

4         Say that again.

5              MR. SCHLES:  Your Honor, the argument is

6    essentially that the condition is overbroad because as

7    written and defined in the code it includes, you know,

8    things that are in the mainstream media.  And in the

9    sentencing memorandum I had quoted language that has been

10   used in the past for -- to cover that condition that makes

11   it clear that it is meant to be limited to things that do

12   not include simulated sexual contact between adults as you

13   would see in the mainstream media.

14             THE COURT:  I'll hear from the government.

15             MS. WHITE:  Your Honor, I believe that condition

16   96 is set forth in order to make sure that the defendant

17   doesn't maintain materials that would interfere with his sex

18   offender treatment.  And so to that extent we believe that

19   the condition is reasonable and we would add that in

20   response to what's provided on page 28 of the PSR as the

21   office of probation's response.

22        Thank you.

23             THE COURT:  The statute defines sexually explicit

24   conduct to include actual or simulated sexual conduct.

25   Prohibiting the defendant from accessing even simulated

1   sexually explicit conduct deprives Mr. Dugan of more liberty

2   than is reasonably necessary in my opinion.

3       I hold that the scope of the condition should not be

4   that broad; that is, it should not include simulated conduct

5   between adults, which is often found in mainstream films and

6   television.

7       The condition will be modified to read as follows:

8       Except as otherwise provided in this paragraph, the

9   defendant must not view or possess any visual depiction,

10  including any photograph, film, video, picture or

11  computer -- or computer-generated image or picture whether

12  made or produced by electronic, mechanical or other means of

13  sexually explicit conduct for the purpose of sexual

14  gratification and would comprise any sex offense specific

15  treatments.  As applied to the defendant the term sexually

16  explicit conduct shall not include adult simulated sexually

17  explicit conduct.

18      Objection number two, the defendant objects to the

19  conditions in paragraphs 99 and 111 regarding the

20  consumption of alcohol.

21      Anything further on that?

22          MR. SCHLES:  No, Your Honor, other than while

23  Mr. Dugan admittedly has had a period of time where he was

24  abusing alcohol by his own admission, I don't believe a

25  total prohibition of alcohol for what will be obviously a

1    very lengthy term of supervised release is necessary.

2         I would not have any objection, Mr. Dugan would not

3    have any objection, that he shall refrain from excessive

4    consumption of alcohol or becoming intoxicated, but as

5    written now it would be like a champaign toast at a wedding

6    or things like that.

7         I think that goes further than is necessary to both

8    protect the public and to ensure that Mr. Dugan does not

9    abuse alcohol or have any alcohol use contribute to his

10   treatment.

11            THE COURT:  Anything from the government?

12            MS. WHITE:  No, Your Honor.

13        Thank you.

14            THE COURT:  I find that requiring the defendant to

15   refrain from alcohol as a condition of supervised release is

16   reasonable during that period.

17        Supervised release conditions are a part of the

18   restrictions and punishment imposed as a result of the

19   criminal conviction.

20        Mr. Dugan has identified a mental health diagnosis of

21   ████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ███████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████.

25        After his mother became ill, Mr. Dugan began drinking

1    heavily for two or three months.  Because of his struggles

2    with mental health and heavy drinking under prior stressful

3    situations, I find that the conditions recommended in

4    paragraphs 99 and 111 are reasonable.

5         As counsel is well aware, conditions of supervised

6    release are always subject to change or amendment upon

7    petition to the Court during the period of supervision.

8         The defendant objects to the imposition of the $5,000

9    special assessment.

10        Anything further on that?

11            MR. SCHLES:  No, Your Honor.

12            THE COURT:  Anything from the government?

13            MS. WHITE:  Your Honor, we would simply note that

14   while the defense argues in its brief that the defendant and

15   his wife are soon to be divorced, in the packet of materials

16   provided by the defense there is a letter from the wife

17   indicating that she knows and loves her husband and that

18   they're best friends.

19        There's no indication of any pending divorce in those

20   materials, so we would ask the Court not to take that into

21   consideration.

22        The defendant retained private counsel and his finances

23   are indicative of having the resources to pay that

24   assessment.

25        Thank you, Your Honor.

1          MR. SCHLES:  Your Honor, in terms of the status of

2    Mr. Dugan and his wife's marriage, I think many

3    relationships are complex.  You can love someone and be in

4    love with somebody and seek a divorce.  She is seeking a

5    divorce.  She has filed for a divorce.  It's pending at this

6    time.

7          As you know, Mr. Dugan obviously is incarcerated.  The

8    Logan County's, I guess, family court has appointed a

9    guardian ad litem at this time.

10         There has been no resolution in terms of a property

11   settlement or divorce, but the divorce is still there.

12         My understanding was that that -- in addition to the

13   $17,000 of individual restitution, that we were just going

14   to hold that in abeyance for up to 90 days to see if we can

15   come to an agreement on that or just have the Court

16   determine that as coming.

17         I will agree, Your Honor, that --

18             THE COURT:  You don't think --

19             MR. SCHLES:  -- as we speak my client is not

20   indigent on paper.  His assets exceed his liabilities.

21             THE COURT:  Don't you believe the statute requires

22   me to impose a $5,000 special assessment?

23             MR. SCHLES:  I'm sorry, Your Honor?

24             THE COURT:  Doesn't the statute require me to

25   impose a $5,000 special assessment?

1          MR. SCHLES:  The only exception is indigency is my

2   understanding, Your Honor.  And as I say he -- on paper as

3   we speak he is not indigent.  It is more looking forward

4   prospectively.  I understand the Court's position.

5          THE COURT:  All right.  I overrule the objection.

6      Finally the objections are to restitution, which we're

7   going to deal with later.

8      Let me say this about some of the issues that maybe

9   you'll be dealing with on restitution.  I received a stack

10  of letters, statements and so forth about that thick four

11  days ago.  I assume defense counsel didn't receive them any

12  earlier.

13     I don't want to embarrass the Assistant United States

14  Attorney, but I doubt that if I ask you you could pull out

15  the exact letter from the exact person for each of the cases

16  here, could you?

17         MS. WHITE:  Most respectfully I do have them here,

18  but we have no objection to handling restitution --

19         THE COURT:  You have them all?

20         MS. WHITE:  Yes, sir.

21         THE COURT:  I understand, but do you have the ones

22  that just relate to the people that have made claims?

23         MS. WHITE:  I have those as well as the --

24         THE COURT:  Can you give me the one that's for --

25  give me a name.

1          Jenny.  Do you have Jenny's handy?

2               MS. WHITE:  I'm not sure handy would be the word

3     that I would use, Your Honor.  I do have the stack here.

4               THE COURT:  Yeah, I have the stack as well.

5     That's the problem.  It's, you know, hundreds of pages of

6     things.  And if we're going to deal with this appropriately,

7     just handing somebody that package without more doesn't

8     really inform anything.

9               MS. WHITE:  Yes, Your Honor.

10              THE COURT:  It took my law clerk a long time to

11    find me the ones I needed to see.

12              MS. WHITE:  Yes, Your Honor.

13              THE COURT:  So I suspect -- I just suspected that

14    these kinds of things come in bulk --

15              MS. WHITE:  Uh-huh.

16              THE COURT:  -- to the probation office at the

17    instance of some bureaucratic mechanism within the

18    Department of Justice; is that fair?

19              MS. WHITE:  Yes, it goes through a series of

20    people and it ultimately ends up in the probation office for

21    further dissemination.  We're grateful for their assistance.

22         I spoke to Mr. Schles before court.  We do agree that

23    the statute allows 90 days.  That's a reasonable request.

24    And because he's further agreed to put the money at issue in

25    a trust with the Court, we have no objections to spending a

1  little more time on that issue separate from today's

2  sentencing.

3          THE COURT:  Okay.  Well, the whole system is a bit

4  bizarre -- the statutory scheme.

5      The victim's trust fund with more accountability of

6  what happens to these monies and the receipt of them and how

7  they're dispersed and so forth would seem to me to be more

8  in the interest of justice, but then again I have no

9  interest in running for Congress.

10          MS. WHITE:  That may be above my pay grade, Your

11  Honor, but I don't disagree with you that the system could

12  use some improvements.

13          THE COURT:  For example, you only have like three

14  or four people who have requested restitution.  The amounts

15  are just round amounts with no -- the standard being

16  preponderance of the evidence as to what the damages are.

17  We don't have an affidavit.  We don't have any statement of

18  what the damage is.  We don't have anything.  And that's

19  true every time it comes up here.

20          MS. WHITE:  Uh-huh.

21          THE COURT:  It just so happens that Mr. Schles is

22  the first person that's objected.  I've wondered about it

23  for a couple of decades, but --

24          MS. WHITE:  Well --

25          THE COURT:  -- in any event I am certain given the

```
 1    quality of the lawyers on both sides that you will work it
 2    out and let me know at a hearing to be set by the courtroom
 3    deputy clerk probably after consultation with you fine
 4    lawyers.
 5         Okay.  Any additional objections to the presentence
 6    report?
 7              MR. SCHLES:  The only other objection was simply
 8    to the boilerplate paragraphs stating that the probation
 9    officer found no grounds for a variance, Your Honor, but
10    that -- we are asking for a variance obviously.
11              THE COURT:  Well, she didn't find any, which I'll
12    take her at her word that she didn't find any.
13         That doesn't prohibit you from arguing for a variance
14    and the United States Attorney opposing it and me doing
15    whatever I think's in the interest of justice, right?
16              MR. SCHLES:  Correct, Your Honor.
17              THE COURT:  Okay.  Mr. Dugan, do you have any
18    objections to any of the facts contained in the presentence
19    report not previously addressed?
20              THE DEFENDANT:  Please repeat the question.
21              THE COURT:  Do you have any additional objections
22    to the facts contained in the presentence report not
23    previously addressed?
24              THE DEFENDANT:  No, sir, I do not.
25              THE COURT:  Are you completely satisfied with the
```

1    legal representation you've been provided from the beginning

2    of that representation through today?

3                THE DEFENDANT:  Yes.

4                THE COURT:  I find sufficient indicia of

5    reliability to support the probable accuracy of the matters

6    contained in the presentence report and the addendum

7    thereto.

8        I adopt the presentence report and the addendum except

9    as otherwise noted.

10       I direct the probation office to file a copy of the

11   presentence report in the court file under seal.

12       The defendant stands convicted of accessing with the

13   intent to view child pornography.

14       Federal law provides the following maximum penalties:

15       A term of imprisonment of 20 years, a period of

16   supervised release of life, a fine of $250,000, restitution,

17   a mandatory special assessment of $100, an additional

18   special assessment of $5,000.

19       The United States sentencing guidelines are advisory

20   and are not binding on the Court.  I may not presume the

21   guidelines to be reasonable.  Nevertheless, I am required to

22   carefully calculate and consider the guidelines when

23   arriving at a just sentence.

24       I'll do that now.

25       The relevant U.S. sentencing guideline in this case is

1    found in 2G2.2.  That provides for a base offense level of

2    18.

3         Section 2G2.2(b)(2) provides for a two-level increase

4    if the material involved a prepubescent minor or a minor who

5    had not attained the age of 12 years.  Here the defendant

6    possessed material involving children under the age of 12;

7    therefore, a two-level increase is applied.  That increases

8    the offense level to 20.

9         Section 2G2.2(b)(4)(A) provides for a four-level

10    increase if the offense involved material that portrays

11    sadistic or masochistic conduct or other depictions of

12    violence.  Here the defendant did possess material involving

13    sadistic or masochistic conduct or other depictions of

14    violence as reflected in the file names located on his

15    computer.  A four-level increase is applied.  That increases

16    the offense level to 24.

17         Section 2G2.2(b)(6) provides for a two-level increase

18    if the offense involved the use of a computer, et cetera.

19    That increases the offense level to 26.

20         I'm well aware of the perfectly legitimate objections

21    to that enhancement and will consider when I impose my

22    sentence.  Nevertheless, I am required to calculate the

23    guidelines as they're written, so that increases the offense

24    level to 26.

25         2G2.2(b)(7)(D) provides for a five-level increase if

1   the offense involves 600 or more images.  Here over a

2   thousand images of child pornography were recovered from the

3   defendant's hard drive; therefore, a five level increase is

4   applied.  That increases the offense level to 31.

5        Again, I'm aware of the circumstance that makes the

6   number of images problematic and somewhat irrelevant in

7   light of modern technology.

8        Moreover, I have a policy disagreement with the

9   Sentencing Commission with regard to tying the length of

10  punishment to the numbers of images, the amount of drugs,

11  the amounts of money, and all of those formulaic processes.

12  I honestly have never been able to wrap my head around why

13  having 599 images is less culpable than having 600 images or

14  700 for that matter.

15       I find for proper calculation the offense level is 31.

16       The defendant has no criminal history.  That

17  establishes a criminal history category of one.

18       Given a total offense level of 31 and a criminal

19  history category of one, the advisory guideline range is as

20  follows:

21       A term of imprisonment of 108 to 135 months, a period

22  of supervised release of five years to life, a fine of up to

23  $250,000, restitution, and a special assessment of $100,

24  plus the additional special assessment of $5,000.

25       Mr. Schles, anything you or Mr. Dugan would like to

1    proffer with respect to these calculations not previously

2    addressed?

3              MR. SCHLES:  Not with respect to the calculations,

4    Your Honor.

5              THE COURT:  Ms. White, anything concerning the

6    calculations?

7              MS. WHITE:  No, sir.

8              THE COURT:  Section 3553(a) of Title 18 provides

9    several additional factors that the Court must consider when

10   arriving at a just sentence.  The parties have, in their

11   sentencing memorandum, addressed the 3553(a) factors at the

12   direction of the Court.

13        Does either party want to offer additional information

14   on the 3553(a) factors recognizing I will also give you an

15   opportunity to speak before I impose sentence.

16        Mr. Schles, anything on the 3553(a) factors not

17   addressed in your memorandum?

18             MR. SCHLES:  Yes, Your Honor.

19        I would -- I don't want to belabor the statistics and

20   the arguments as set forth in the written sentencing memo

21   that has been submitted.  I know this Court is aware and

22   understands the issues that have been raised.

23        What I would like to do is point your attention to a

24   case you're well familiar with because you authored it:

25   *United States v. Cruikshank,* 667 F.Supp. 697, 2009 decision

1       of this Court.

2            And what I'd like to do is simply draw parallels

3       between the situation or position of Mr. Cruikshank and that

4       of Mr. Dugan for the Court's consideration.

5            In both cases the base offense level was 18 for each

6       individual.  Each received the two-level enhancement under

7       2G2.2(b)(2).  Each --

8                 THE COURT:  I've reviewed that decision in

9       anticipation of this hearing, but go ahead and make your

10      record.

11                MR. SCHLES:  And also received two levels for

12      2G2.2(b)(6) for use of a computer.  On the (b)(7), for the

13      number of images, Mr. Cruikshank received plus four;

14      Mr. Dugan receives plus five.

15           Prior to adjustment under chapter three,

16      Mr. Cruikshank's total guidelines were 26; Mr. Dugan's is

17      31.  Mr. Cruikshank was a guilty plea case.  He received

18      three levels off for acceptance of responsibility.

19           I fully understand this Court, in calculating the

20      guidelines, cannot grant a three-level reduction for

21      acceptance of responsibility, but I know this Court, because

22      you've done it to me, has expressed in *United States v.*

23      *Walker* and in other cases a preference for public jury

24      trials so that the public is aware of what's going on and

25      the transparency.

1          And I just would submit, Your Honor, that when somebody

2     does elect to exercise their constitutional right to a trial

3     semantically maybe acceptance of responsibility being denied

4     is not a punishment, but if it results in a higher

5     sentencing range it has the same effect and I would ask the

6     Court to take that into consideration as well.

7          The largest difference between the two individuals,

8     Mr. Cruikshank and Mr. Dugan, is that Mr. Cruikshank did not

9     receive the four-level enhancement under (b)(4)(A) of 2G2.2.

10          These are mouthfuls, Your Honor.

11               THE COURT:  It's all right.

12               MR. SCHLES:  And if you look at it from that

13     standpoint, four levels up from -- Mr. Cruikshank ultimately

14     received a sentence from this Court of level -- of -- excuse

15     me -- of 24 months, which represents the top end of level 15

16     for a criminal history category one defendant.

17          If we were to adjust that here, level 19 and criminal

18     history category is 30 to 37 months, which is the basis for

19     our request for a sentence of 36 months, Your Honor.

20               THE COURT:  I think you've made an eloquent

21     argument based on something I decided in a completely

22     separate case, but in listening to it -- and I mean no

23     offense -- I can't help but think it also demonstrates the

24     problem with a formulaic approach to sentencing that does

25     not carefully consider the individual characteristics of

1    each defendant and the circumstances surrounding each crime.

2        So I take your point and it's well made.

3            MR. SCHLES:  Well, may I continue, Your Honor?

4            THE COURT:  Sure.

5            MR. SCHLES:  In determining -- looking at the

6    nature and circumstances of the offense, Mr. Cruikshank paid

7    for access to an online website.  He paid for one month at

8    49.95; on one occasion $94.95 for an unspecified amount in

9    the case anyway.  And it also mentioned that he also

10   accessed free images on the internet.

11       Mr. Dugan did not subscribe to any service or pay

12   anything, but he used the dark website to access in a

13   somewhat similar manner to what Mr. Cruikshank did.

14           THE COURT:  Over a more extended period of time as

15   well.

16           MR. SCHLES:  I'm sorry, Your Honor?

17           THE COURT:  Over a more extended period of time as

18   well.

19           MR. SCHLES:  I think it was fairly close in the

20   period of time, Your Honor.

21           THE COURT:  I'm not sure of that.  I just read it

22   yesterday, but you tell me and I'll stand corrected.

23           MR. SCHLES:  Also, similarly, Your Honor, neither

24   Mr. Cruikshank or Mr. Dugan downloaded and saved the images.

25   In both cases they viewed them on a website and because of

1    the operating systems and technical mechanisms built into

2    the way the systems operated, the images were found in

3    temporary files.  Neither one of them demonstrated the

4    characteristics of collectors who organize and catalogue and

5    take extreme measures.  Neither one of them had any images

6    except on one device.  Both of them owned multiple devices,

7    all of which were searched.  The images were only found in

8    the temporary files on one device in each case.

9         In terms of the history and characteristics of the

10   defendants, Your Honor, neither one had any criminal

11   history.  My client has zero criminal history.  He had one

12   traffic citation that was dismissed.  And he's in his

13   mid-50s, Your Honor.  It doesn't get much more spotless than

14   that.

15        Both gentlemen are married with children -- or a child

16   in my client's case.

17        Both Mr. Cruikshank and Mr. Dugan have a history of

18   being hard working and gainfully employed successful

19   individuals.  Both of them lost their job as a result of

20   their convictions.  Both of them have the support of their

21   families.

22        And in neither case -- and I think this is key.  In

23   neither case was there a hint that either one of them had

24   ever even contemplated any kind of physical contact or abuse

25   with a child and that their criminal conduct was, in fact,

1  limited to sitting in their house and looking at these

2  images.

3       This Court has recognized that this is a serious

4  offense and we do not question that.

5       The Court has recognized and many courts have that if

6  it were not for demand there wouldn't be production.  That

7  goes for, I guess, all drug crimes, these types of crimes,

8  anything that involves consumption.  But, again, no evidence

9  in either case that they have ever had any, any, any contact

10  with children that were inappropriate.

11       In terms of deterrence, this Court found that 24 months

12  was an adequate sentence to deter others.

13       In this case 36 months is obviously more than

14  24 months.  So that if 24 months was adequate to deter

15  others in Mr. Cruikshank's case, I believe 36 months serves

16  the same purpose here.

17       In terms of protecting the public, this Court has

18  recognized the social stigma attached to this offense, the

19  loss of prestige and reputation in one's community.  Again,

20  he lost his job.  Mr. Dugan, I think the thing he feels

21  worst about is what he's put his family through, the

22  tremendous suffering for his wife and his child and his

23  other family members who are close to him.

24       I believe that both Mr. Dugan and Mr. Cruikshank

25  represent offenders in the lowest category in terms of

1    likelihood to be recidivists.

2         I would also point out that Mr. Dugan undoubtedly is

3    going to be on supervised release for a very long period of

4    time.  I expect this Court will impose as conditions of

5    supervised release that he receive sex offender treatment

6    from a licensed and approved provider and that can be

7    ongoing and long term.  He will be closely supervised by the

8    Department of Probation.

9         And given his otherwise spotless criminal record, Your

10   Honor, I think the need to protect the public can be

11   adequately protected with a 36-month sentence.

12        And in terms of providing any needed correctional

13   treatment or substance abuse or mental health treatment,

14   that can be done better while he is in the community from a

15   licensed professional than can be done during his period of

16   incarceration, although we expect that he will be having

17   that during that too.

18        And in terms of the kinds of sentences available, both

19   Mr. Cruikshank and Mr. Dugan are class C felons, probation

20   eligible, but as you found in Cruikshank probation would not

21   require or allow for sufficient deterrence to others, Your

22   Honor, and I think that factor would also apply here.

23        And, again, just finally, Your Honor, I think that your

24   decision in Cruikshank was a very reasonable look at the big

25   picture of you do the numbers; they come out where they do.

1        Again, I wrote a 15-page memo or whatever about that,

2   so I'm not going to go into, but I would ask you to find

3   that a sentence of 36 months is sufficient but not greater

4   than necessary to fulfill the purposes of 3553(a)(2).

5            THE COURT:  Anything further on the 3553(a)

6   factors?

7            MS. WHITE:  I don't need to address anything on

8   the factors beyond what I briefed, but I would like an

9   opportunity to argue at the appropriate time.

10           THE COURT:  You certainly will.

11           MS. WHITE:  Thank you.

12           THE COURT:  That's where we are right now.

13       Anything that the government would like to say before I

14   impose sentence?

15           MS. WHITE:  Thank you, Your Honor.

16       I heard Mr. Schles's arguments.  I've read his

17   responses.  It is true that the defendant lost his job at

18   the time that he was incarcerated because he's unable to go

19   to work.  That is a fact.

20       I do understand that he has family support, but what

21   Mr. Schles is arguing is that in another case in another day

22   with another defendant he received a certain sentence.  And

23   so it follows directly from that in his logic that this

24   defendant, Mr. Dugan, should also receive a very specific

25   sentence based upon that other case on another day.

1          And while I respect the fact that we do need to have

2    sentences that on some level correlate or relate to one

3    another, I think that Mr. Dugan is a separate and distinct

4    individual.

5          He stands before you today convicted of accessing with

6    intent to view child pornography.  I appreciate Mr. Schles's

7    attempts to downplay what that meant.  That's the job he

8    does and he does a very good job at it, but let's be clear.

9    Mr. Dugan sought out the dark web, found specific websites

10   that required membership to access child abuse and sexual

11   exploitation material, and then looked at them over and over

12   and over again.

13         He told the officers in his statement that he continued

14   to look at them.  And then he said this:

15         I decided to clean it up, so I deleted everything.

16         So when the defendant argues, well, I didn't have the

17   complex file structure and sorting mechanism of true people

18   who are into child pornography, that argument shouldn't hold

19   weight because we don't see those file structures that the

20   defendant argues don't exist.  We don't see them because the

21   defendant deleted all of them.

22         So I would ask the Court not to give a lot of weight to

23   that argument because it's simply a factual distinction that

24   we have in this case.

25         I would also -- I would like to respond to Mr. Schles's

1    argument that there's no allegations that Mr. Dugan or

2    Mr. Cruikshank's, for that matter, touched any children.

3        I can't speak to the Cruikshank's case.  I wasn't the

4    AUSA on that case.  But I can tell you that that is the

5    epitome of a red herring.  Let me come into court and tell

6    the judge all of the things that I didn't do that I was not

7    charged with to try to convince the judge to give me a break

8    at sentencing.

9        That's irrelevant.  He's not charged with touching

10   children in this case and so I don't think the argument that

11   he didn't should in any way allow him to receive a less

12   significant sentence for what he did do and what he does

13   stand convicted of.

14       In addition, I understood in the pleadings that the

15   defendant had several family members very close to him who

16   became ill, ultimately succumbed to their illnesses.  And I

17   think that many of us in this courtroom have been in that

18   situation of having family members to care for.  It is

19   challenging.  It is difficult.  But we didn't turn to child

20   pornography to escape that pain.

21   

22

23

24

25

1  ████████████████.

2      Those numbers are stunning and they certainly address a

3  completely different public health crisis that we have.  And

4  I don't want to take away from the pain that that causes a

5  family, but I do want to carefully and respectfully point

6  out that those family members didn't turn to child

7  pornography.  And so while I respect the fact that the Dugan

8  family, like many other families in this courtroom, have had

9  significant challenges, that in no way justifies or explains

10  why he turned to child pornography.

11      One has nothing to do with the other.  There's just no

12  study, there's no indication, there's no research that shows

13  a link between those two.  And so we'd ask the Court to give

14  that the appropriate weight at this time.

15      We don't see -- the government doesn't see a reason for

16  a downward variance or departure in this case.  Mr. Dugan

17  told the officers that he did it.  He indicated that he was

18  curiosity -- that he was curious, that his curiosity got

19  him, that his life was over and his wife was gonna kill him.

20  He knew what he did was wrong.  He tried to cover up his

21  tracks.  And when he was unsuccessful to the extent that we

22  still found 1,237 images on his computer, that's what brings

23  him before you today for sentencing.  And we'd ask that you

24  give him a sentence within the guideline range in this case.

25      Thank you.

1          THE COURT:  Anything that counsel for the

2    defendant or the defendant would like to say before I impose

3    sentence?

4          MR. SCHLES:  Yeah.  I would like to briefly

5    respond to Ms. White, Your Honor.

6      I think Mr. Dugan's past conduct, in terms of

7    criminality, his lack of any evidence or any indication that

8    he had any interest in ever actually abusing a child is

9    highly relevant, Your Honor.

10      One of the main purposes under 3553(a) is to protect

11    the public.  People can commit the crime and for other

12    reasons, characteristics, one person can present a greater

13    need to protect the public from that individual than from

14    another.

15      And I would submit that Mr. Dugan, the fact that he has

16    never done anything untoward towards any child in his

17    life -- and I'm sure the government looked for that -- is

18    certainly relevant to whether or not he presents a risk of

19    future danger.  And the Court should fully consider that in

20    determining the need to protect the public and the length of

21    sentence that is appropriate.

22      Second, the Court will rely on its recollection as I'm

23    doing.  I do not believe Mr. Dugan ever stated that he

24    deleted the images.  I believe that he stated something

25    along the lines it got too scarey and he deleted the links

1    to the websites, not the images himself.  There was no

2    evidence that he downloaded the images and then deleted

3    images from his hard drive, Your Honor.

4         But ultimately I think in terms of all of the 3553(a)

5    factors and looking at the whole picture of the need to

6    protect the public and the need to deter others being major

7    issues, obviously punishment is a part of the sentencing

8    scheme and justly so.

9         36 months in prison, Your Honor, is not a slap on the

10   wrist.  To suggest that that's letting somebody off sending

11   someone to prison for three years at his age for his

12   situation -- or any age -- I shouldn't even say -- that

13   going to prison -- I'm just more used to younger clients,

14   Your Honor, but I find that just not realistic at all.

15        I believe a sentence of 36 months is adequate.  And it

16   does take into account Mr. Dugan's conduct, his character,

17   and his specific actions in this case.

18        That's all, Your Honor.

19             THE COURT:  Mr. Dugan.

20             THE DEFENDANT:  Your Honor, I'd like to express

21   great sympathy and compassion for all the parties involved.

22   I would just ask that you look at my whole life from before

23   to where I'm at right now to where I'm going to, you know.

24        I've spent my whole life working for others, pouring my

25   life into them with less regard to myself and more regard to

1    them.  I've -- there's things in my life that people don't

2    even know that, you know, I travel.  I would give food away

3    to homeless people and hand out money and just try to do

4    good to anybody and everything and just -- I want you to be

5    able to see those things in me.

6         I'm a father who is just trying to keep his adult son

7    alive, just give him hope that there's something in this

8    world worth living for.  My wife is -- is not -- her health

9    is not great.  And I'm going to have to be able to -- no

10   matter what happens between us, I have responsibility to

11   take care of her even if I'm not with her.

12        This is -- those kind of responsibilities -- and I

13   don't have a whole lot of time left to be able to work and

14   earn and be able to rebuild my retirements.  I poured most

15   of all my retirements into my parents taking care of their

16   lives.  And they deserved every bit of it, but it was a long

17   sicknesses.  My finances dwindled quite a bit.  And I -- I

18   promise you that, you know, you'll see a person who's

19   already seeking to help others.

20        I spent three months in South Central.  And every

21   person I've been housed with will tell you that I've spent

22   time even if it was something -- giving them a pack of

23   mustard just to make sure their lives were better for the

24   moment or helping them read their legal papers or just

25   counseling them on the Bible or things like that.

1        I've put everyone else ahead of me than myself with

2   one -- first time in my life I've had to ask people to put

3   me ahead of them for the moment.  I didn't -- I -- I didn't

4   think it would be fair to ask people to help me.  I asked my

5   wife and my son to write letters and I understand that

6   almost a dozen of them came in.  I didn't ask these people

7   for anything, so I just ask you for mercy.

8            THE COURT:  It's the judgment of the Court the

9   defendant be committed to the custody of the Federal Bureau

10  of Prisons to a term of 54 months.

11       Upon release from prison the defendant shall be placed

12  on supervised release for a term of five years.

13       Within 72 hours of release you shall report in person

14  to the probation office in the district to which you're

15  released.

16       While you're on supervised release you must not commit

17  another federal, state or local offense; you must not

18  possess any dangerous device or firearm; you must not

19  possess any unlawful controlled substance; and you must

20  comply with the standard terms and conditions of supervised

21  release as recommended by the Sentencing Commission and as

22  adopted by this Court, including the special condition that

23  you participate in a program of testing, treatment and

24  counseling for drug and alcohol abuse.  That condition may

25  be modified upon motion.

```
 1          The probation -- presentence report, rather, sets out
 2     the standard conditions of supervised release as adopted by
 3     this district and optional and special conditions that apply
 4     specifically to your case.
 5          Have you reviewed those conditions in the presentence
 6     report?
 7               THE DEFENDANT:  Yes.
 8               THE COURT:  Have you talked them over with your
 9     lawyer?
10               THE DEFENDANT:  Yes.
11               THE COURT:  I have changed one of them based on an
12     objection by your lawyer.
13               THE DEFENDANT:  Uh-huh.
14               THE COURT:  Other than that one, I intend to adopt
15     all the ones in the presentence report.
16          Do you want me to read those to you or will you waive
17     reading?
18               THE DEFENDANT:  I would waive it, Your Honor.
19               THE COURT:  Very well.
20          I impose and you'll be subject to the conditions as set
21     out in the presentence report, including the standard
22     conditions adopted in this district except as previously
23     noted by the Court.
24          As we talked about earlier, the Court requires that the
25     government prove the amount of restitution by a
```

1    preponderance of the evidence.  Of course, absolute

2    precision is not required when calculating restitution, but

3    you must establish the amount of the individual victims'

4    loss with reasonable certainty.  See *U.S. v. Johnson.*  It's

5    a Fourth Circuit case from 2017, 680 F. App'x 194.

6         You have made me aware of three requests for

7    restitution totaling $17,000.  I assume that's what you're

8    going to work on are those three requests; is that correct?

9              MS. WHITE:  Yes, Your Honor.

10             THE COURT:  I'll reserve ruling on the issue of

11   restitution pending a hearing.

12        Is there objection to the Court -- well, let me ask my

13   courtroom deputy.

14        Should we go ahead and enter the judgment order or do

15   we wait for the restitution?

16             THE COURTROOM DEPUTY CLERK:  We go ahead and enter

17   the judgment order.

18             THE COURT:  Is that acceptable?

19             MS. WHITE:  Yes, Your Honor.

20             MR. SCHLES:  Yes, Your Honor.

21             THE COURT:  All right.  I'll reserve ruling on the

22   restitution issues and have a separate hearing on that

23   matter on January 12th, 2023, at 2:30 p.m.

24        Submit a memo or an agreed statement by December 22nd.

25        If there isn't agreement, then the government should

1    have theirs in by the 22nd and the defendant by the 5th of

2    January, but I'm hoping you'll have an agreed statement.

3         I may, in fact, be able to dispose -- based on what you

4    submit, I may be able to dispose of the hearing.  We'll see.

5         After considering an appropriate sentence, I've

6    reviewed both the victim impact statements, as I sorted

7    through them, and the letters of support that Mr. Dugan has

8    submitted to the Court.

9         After considering the advisory guidelines and the

10   factors from 3553(a), I find that the sentence of 54 months,

11   followed by five years' supervised release, is reasonable

12   and appropriate for a number of reasons.

13        Over the course of several months, Mr. Dugan accessed

14   over a thousand images of child pornography using the dark

15   web, including sadistic and masochistic brutal images.  It

16   does not appear from the record that he intentionally saved

17   the images to the hard drive, but I don't know that for

18   sure.  And there's no evidence that he distributed the

19   images to anyone else.

20        Several of the enhancements as I mentioned as we went

21   through them have not kept pace with technological

22   advancement.  The U.S. Sentencing Commission found in 2019

23   that over 95 percent of non-production child pornography

24   offenders received enhancements for use of the computer and

25   for the age of the victims.  Given the evolution of

1    technology today, it's hard to imagine how the instant crime

2    can be committed without the use of the computer.

3        I'm old enough to remember when the principal

4    purveyor -- and I mean this respectfully and not the way

5    it's going to come out -- was the Postal Service.  The

6    postal inspectors would put an ad in other newspapers and

7    people that were interested in that sort of thing wrote in.

8    And then they got the child pornography and then they got

9    arrested.  It was sort of like the bizarre To Catch a

10   Predator stuff that we see every day now.

11       The purpose of the enhancements, in my view, is to

12   target more serious and culpable offenders, but today some

13   of those enhancements that I've discussed apply in most

14   cases and in response most courts, including this one, have

15   increasingly applied downward variances.

16       Mr. Dugan is 55 years old, no criminal history.  He's

17   been diagnosed with hypertension, high cholesterol and

18   arthritis.  He's prediabetic.  He and his wife have been

19   married for 30 years and they have one child together.  The

20   defendant has approximately 20 years of experience as a

21   sales manager.  According to his most recent employer,

22   Mr. Dugan's a tireless worker and performed outstanding

23   work.  Additionally, Mr. Dugan cared for both of his parents

24   when they became sick and has been described as a good

25   father by his wife and son.

1          This offense is serious.  By paying for access to

2     images of child pornography or by accessing the dark web,

3     Mr. Dugan supported, just by doing it, the creation and

4     distribution of images depicting the sexual abuse of

5     children driving up demand for new images, rewarding those

6     who create them.

7          I disagree with the argument that his conduct must be

8     punished more severely because he's more likely to

9     physically abuse a child.  I have looked at the arguments

10    and the articles written on that and I don't find the

11    evidence such as it is persuasive at all.  That's not to say

12    that the crimes are mutually exclusive.  They certainly

13    aren't, but the direct connection between this crime and

14    pedophilia is not -- and criminal pedophilia is not a matter

15    of scientific certainty.

16         So I think this reflects the seriousness of the

17    offense, promotes respect for the law and provides just

18    punishment.

19         The harshness of the sentence for accessing

20    computer-based child pornography aims at deterring others

21    from similar conduct.  I find that this sentence, despite

22    being significantly below what's recommended by the

23    guidelines, will provide adequate deterrence.  It will

24    protect the public from further crimes of this defendant.

25         Mr. Dugan's already been punished and will continue to

1   be punished by a strong social stigma in addition to his

2   prison sentence.  Incarceration plus societal punishment I

3   believe will be adequate to deter Mr. Dugan from

4   re-offending.

5        Finally, I believe Mr. Dugan's participation in any

6   mental health or other treatment programs by the Bureau of

7   Prisons is advisable and will aid in his rehabilitation.

8   I'd ask that the probation officer also consider counseling

9   directed toward his conduct during his five years of

10  supervised release.

11       Are you in a position to go ahead and pay the $5,100

12  now?

13            MR. SCHLES:  Not literally as we speak, but

14  promptly, Your Honor.

15            THE COURT:  Well, let me just make them due

16  immediately and see that they're taken of.  There's no point

17  in waiting 90 days for that.

18            MS. WHITE:  Your Honor, if I may interject.

19       I believe that the clerk's office needs an order, you

20  ordering the defendant to pay both the assessment and to pay

21  the restitution in a trust capacity, and further ordering

22  that they be allowed to accept it.  So we would ask that

23  that take place either now or at some point during this

24  proceeding.

25            THE COURT:  Well, I'm going to ask that the

1   special assessment be paid as in the normal course; that is,

2   it's due immediately.

3           MS. WHITE:  Thank you.

4           THE COURT:  And he's in jail.  I can't really do

5   much else to him except order him to do it.

6       With regard to the restitution, I will enter a separate

7   order directing that the clerk's office hold -- how much

8   money?

9           MR. SCHLES:  Well --

10          THE COURT:  $22,000?

11          MR. SCHLES:  We said 22 earlier, but that included

12  the $5,000, so I guess it would be 17.

13          MS. WHITE:  That's correct, Your Honor, 17,000 for

14  restitution.

15          THE COURT:  I will enter an order directing the

16  clerk's office to hold $17,000 in trust pending the Court's

17  determination of the proper amount of restitution in this

18  case and after the -- that determination to pay the money

19  according to law.

20          MS. WHITE:  Thank you, Your Honor.

21          THE COURT:  Does that work?

22          MR. SCHLES:  Yes, Your Honor.

23          THE COURT:  Mr. Dugan, the only thing you didn't

24  say in your allocution now was to express any sympathy

25  whatsoever for those young children and that disturbs me.  I

1    don't think you have recognized how awful this problem is

2    for the families and the people that are impacted by this

3    kind of criminal behavior.

4              MR. SCHLES:  Your Honor, if I may -- if I may

5    please interject.

6              THE COURT:  Yes.

7              MR. SCHLES:  I believe that was the very first

8    thing that Mr. Dugan said was that he expressed sympathy

9    for everyone involved.  He may not have used the term

10   victims, but I believe that is what he meant to convey to

11   the Court.

12             THE COURT:  I heard him say everyone involved.

13        In any event, I didn't take it as a -- well, I've

14   already imposed the sentence based on what I thought and it

15   didn't have much to do with that.  I'd already pretty much

16   made up my mind to that sentence before I walked in here.  I

17   always listen to allocution and the arguments of counsel

18   before I finally decide on a sentence, but if I didn't do a

19   little work beforehand I wouldn't be doing my job.

20        What I'm telling you is that people suffer for the rest

21   of their lives when they're brutalized to make these

22   pictures.  It's a horrible crime.  Let me just give you a

23   personal example.

24        I intellectually could relate to the idea of how

25   horrible it is, but it wasn't until I was forced in a case

1    to look at the pictures that I saw how horrible -- I can't
2    find a stronger word -- that situation is.  As a consequence
3    you'll catch me not looking unless I'm required to do by the
4    circumstances of the case.
5        In any event, I don't want you and I don't want your
6    family -- and I don't think they will -- you're well aware
7    of what your wife thinks of this.  You knew your life was
8    over because of this.  And the social opprobrium that you
9    receive is justified.
10       Now, having said all of that, which is true, you
11   deserve every bit of punishment you're getting.  Having said
12   that, you're going to do that and then you're going to have
13   a life to live.  And you're going to have a family whether
14   they're -- whether you're married or you're not married.
15   You're still going to have a family and you're going to have
16   a life in society to live.
17       Everything about your prior life indicates to me that
18   you can return to being a good citizen of this community,
19   that you can avoid any further problem with matters of this
20   sort.  I think that with this aberrant flaw, other than
21   that, I think you're a very good man.  There's nothing that
22   convinces me otherwise.  So I want you to get out of prison.
23   I want you to get through your supervised release.  And I
24   want you to make a good life for yourself.
25       You may feel like you're getting older, but I can

1    assure you from my vantage point you're a young man and

2    you've got a lot of life ahead of you.  And I hope that

3    you'll use it as you suggest for the benefit of others,

4    particularly your wife -- or your ex-wife -- and your child.

5    You owe them every bit of your energy to make their life

6    good from here on out.

7         If you said before it's not about you in the past,

8    it's really not about you now.  It's about making up to them

9    the horrible pain that you've inflicted on them.  I'm not

10   trying to pick on you.  I'm just telling you you can do it.

11   You have the ability to do it.  And I think -- I think you

12   will.

13        Good luck to you.

14             THE DEFENDANT:  Thank you.

15        Thank you, Your Honor.

16        I would apologize for my poor choice of words.  I was

17   just struggling to get them out and I wanted you to know

18   that sympathy was directed towards them.  And I do know --

19   and I appreciate -- I've heard from other cases that you've

20   been -- that you presided over of your kindness and your

21   determination to see people do better and I truly appreciate

22   that.

23             THE COURT:  Well, I want you to.  The whole

24   criminal justice system wasn't set up to be mean.  It was

25   set up to protect society and that's what we're about.  And

1    you can be a part of that.  You can be a part of the

2    solution, I think.

3        I can't help but look back at your family and not feel

4    their pain.  I have families coming in here every day and

5    that's the -- it's the hardest part.

6        Now, I'll share something with the lawyers that really

7    doesn't impact on you, but I hate it when defendants bring

8    their little kids here.  I really hate that.  It doesn't

9    help them a bit and it doesn't help me a bit.  I don't -- I

10    think that's pain that doesn't need to be inflicted on

11    children, but be that as it may.

12        I take it there's no issue with regard to confinement

13    awaiting sentencing?

14        MR. SCHLES:  Yes, Your Honor.

15    Mr. Dugan would ask the Court to recommend to the

16    Bureau of Prisons that he be confined at the Bureau of

17    Prisons facility in Morgantown.  It has the programming

18    that he needs and it would be the most convenient for his

19    family.

20        THE COURT:  I honestly don't know what the Bureau

21    of Prisons is doing now with sex offenders.  I want

22    Mr. Dugan to go somewhere where he's safe.  I'll make that

23    recommendation with the understanding that they should

24    substitute their judgment if they believe there's a more

25    appropriate place to assure his safety.

```
 1              MR. SCHLES:  Thank you, Your Honor.

 2              THE COURT:  Anything further?

 3              MS. WHITE:  No, Your Honor.

 4         Thank you.

 5              MR. SCHLES:  Your Honor, I believe you need to

 6    advise him of his appeal rights.

 7              THE COURT:  You know, how often do I forget that?

 8    Too often.

 9         Mr. Dugan, you have a right to appeal this Court's

10    sentence.  If you want to do that, you must file a written

11    notice of appeal within 14 days of the entry of the order of

12    sentence and conviction in your case, which is going to be

13    entered right away, not after the restitution.

14         If you don't file that notice, you won't be able to

15    appeal.

16         Do you understand?

17              THE DEFENDANT:  Yes, sir, I do.

18              THE COURT:  If you do file the notice and I find

19    you don't have sufficient funds to procure documents or

20    transcripts or to hire a lawyer for your appeal those costs

21    will be borne by the United States.

22         Do you understand?

23              THE DEFENDANT:  Yes, Your Honor.

24              THE COURT:  Anything further to come before the

25    Court?
```

1              MS. WHITE:  No, Your Honor.

2        Thank you.

3              MR. SCHLES:  No, Your Honor.

4              THE COURT:  Court's in recess until 1:30.

5

6

7        (Proceedings concluded at 11:08 a.m., October 27, 2022.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     CERTIFICATION:

2          I, Kimberly Kaufman, Official Court Reporter, certify

3     that the foregoing is a correct transcript from the record

4     of proceedings in the matter of United States of America,

5     Plaintiff v. Raymond Dugan, Defendant, Criminal Action No.

6     2:21-cr-00127, as reported on October 27, 2022.

7

8     s/Kimberly Kaufman, RMR, CRR, CRC          January 15, 2023

9     Kimberly Kaufman, RMR, CRR, CRC

10

11

12                            - - - - - -

13    CERTIFICATION:

14         I, Kimberly Kaufman, Official Court Reporter, certify

15    that the foregoing is a correct redacted transcript from the

16    record of proceedings in the matter of United States of

17    America, Plaintiff v. Raymond Dugan, Defendant, Criminal

18    Action No. 2:21-cr-00127, as reported on October 27, 2022.

19

20    s/Kimberly Kaufman, RMR, CRR, CRC          March 2, 2023

21    Kimberly Kaufman, RMR, CRR, CRC                 DATE

22

23

24

25