```
              IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT CHARLESTON

_____x
                                :
UNITED STATES OF AMERICA,       :
                                :
              Plaintiff,        : Criminal Action Number:
       -vs-                     : 2:21-cr-127
                                :
RAYMOND DUGAN,                  :
                                :
              Defendant.        :
_____x


                    RESTITUTION HEARING
            BEFORE THE HONORABLE JOSEPH R. GOODWIN
                 UNITED STATES DISTRICT JUDGE
                       JULY 17, 2023



APPEARANCES:
For the Government:        JULIE M. WHITE, AUSA
                           UNITED STATES ATTORNEY'S OFFICE
                           Southern District of West Virginia
                           Suite 4000
                           300 Virginia Street, East
                           Charleston, WV 25301


For the Defendant:         DAVID O. SCHLES
                           Suite 306
                           815 Quarrier Street
                           Charleston, WV 25301




   Proceedings recorded by mechanical stenography,
transcript produced by computer.
              _____
                AMANDA J. PICKENS, CCR, RPR
                Federal Official Court Reporter
                 300 Virginia Street, East
                   Charleston, WV  25301
```

1          (The following proceedings were held before the

2     Honorable Joseph R. Goodwin, United States District Judge,

3     in the case of *United States of America v. Raymond Dugan,* on

4     July 17, 2023, at Charleston, West Virginia, beginning at

5     1:27 p.m.)

6          MADAM CLERK:  The matter before the Court is the

7     United States of America versus Raymond Dugan.

8          Criminal Action Number 2:21-CR-127.

9          THE COURT:  United States ready?

10         MS. WHITE:  Yes, Your Honor.

11         THE COURT:  Defendant ready?

12         MR. SCHLES:  Yes, Your Honor.

13         THE COURT:  On August 2nd, 2022, Mr. Dugan was

14    convicted of accessing with the intent to view child

15    pornography as charged in the single-count superseding

16    indictment.  On October 27th, 2022, I sentenced him to a

17    54-month term of imprisonment followed by five years

18    supervised release.  I ordered $100 mandatory special

19    assessment and a $5,000 special assessment under the Justice

20    for Victims of Trafficking Act.

21         I refrained from imposing restitution at that time in

22    order to give defense counsel enough time to examine the

23    United States' documents supporting restitution in the

24    amount of $17,000.  I directed Mr. Dugan to deposit $17,000

25    with the clerk to hold in a trust until I resolved the issue

1    of restitution.  Mr. Dugan did that on December 30th, 2022.

2        On December 22nd, the United States had submitted its

3    first restitution memorandum and that it was still seeking

4    17,000 to be paid to three identifiable victims; 3,000 for

5    Victim Number 1, 4,000 for Victim Number 2 and 10,000 for

6    Victim Number 3.

7        In his response, Mr. Dugan agreed that the three

8    individuals are victims of his offense, but argues that the

9    amounts sought do not reflect the degree to which he

10   contributed to the victims' losses.  He contends that each

11   victim is entitled to $3,000, the minimum amount required by

12   statute.  And if that applied there, all three would be

13   $9,000.

14       On July 11th, 2023, less than a week before this

15   hearing, the United States filed a second restitution

16   memorandum and explained that now there are five victims,

17   two additional ones, who have requested restitution.  April

18   seeks no less than $5,000 and Moca seeks $4,000.  The

19   Government now states that Jenny seeks no less than $3,000,

20   when in its previous memorandum the United States stated

21   that Jenny sought an exact amount of $3,000.  In total, the

22   United States now seeks restitution in an amount of at least

23   26,000.

24       Is that a fair summary?

25           MS. WHITE:  Yes, Your Honor.

1          MR. SCHLES:  It is, Your Honor.

2          THE COURT:  Mr. Schles, do you have a response to
3   the United States' recently filed restitution memorandum?

4          MR. SCHLES:  Your Honor, my first response is
5   simply that the two that were added for the first time on
6   the July 11th memorandum did not submit anything timely.  I
7   received notice of it through an e-mail shortly before the
8   memo was filed.  It was e-mail correspondence between me and
9   Ms. White.  I was prior to the hearing provided with that.
10  But I think those two are untimely and should be stricken
11  from consideration.

12       The Government first filed in October with the three
13  initial victims, filed again in December, and as the Court
14  pointed out, less than a week, two -- these come back, were
15  not presented to probation.  Probation prepared a
16  presentence report I believe in September, Your Honor, but
17  don't hold me to that.

18       But in any event, well prior to the initial sentencing,
19  the Government did not object at that time to the
20  restitution sections of the presentence report.  Sentencing
21  memorandums were filed by both parties ahead of the initial
22  sentencing.  The Government mentioned nothing of those two
23  victims.  The Government following that in December of last
24  year filed again.  And, again, they didn't mention those
25  two.

1       So my position as to the two, Moca and --

2           THE COURT: April.

3           MR. SCHLES: -- April, I think those should not be
4   considered, Your Honor, as they were not timely filed or
5   provided to either the defense or probation in a timely and
6   proper manner.

7       And as for the three initial -- my position is pretty
8   simple. The Government under *United States versus Paroline*
9   has the burden of proof. Now, I concede that they have
10  established the three girls -- women perhaps now -- are
11  victims and they are entitled to restitution. But I don't
12  think the Government has carried any burden in that they are
13  entitled from my client specifically more than the minimum
14  amount of $3,000 each.

15      I have looked through all of this stuff, as
16  mind-numbing as it is, and I can discern no consistent
17  methodology, no explanation whatsoever. You notice the one
18  with the most images that my client possessed has the
19  smallest request. The one with one has the largest request.
20  There's no discussion of any comparison of my client to
21  other defendants, how many times these images have been
22  viewed online compared to the number of times my client.
23  It's undisputed my client wasn't involved in preparing them
24  or distributing them.

25          I believe these women -- victims are entitled to

1    restitution.  And I think $3,000 for each of the three is
2    the appropriate ruling in this case.
3               THE COURT:  Well, there is a lack of reasoned
4    consistency in the application of the law to these cases
5    nationwide as best I can tell.  For that reason, I have
6    consulted with Judge Copenhaver and he's willing to take
7    over this case.  And he's going to require a binder from
8    each of you for about -- I don't know -- three inches thick
9    -- I'm kidding -- as to that entire statement.  I'm not
10   kidding about the lack of consistency of the application of
11   the law.  And I understand your position.
12        Let me address to the Government.  Why am I getting
13   these two claims late?  And I didn't even get, again, the
14   supporting documentation which from which I can make a
15   connection for these last two.
16              MS. WHITE:  Well, Your Honor, we provided the last
17   two victims, April and Moca, their information to probation
18   and to Mr. Schles on June 20th.  That was shortly after we
19   received that information.  So to the extent that didn't all
20   make its way to the Court, I am glad to remedy that and I
21   apologize that that wasn't received by the Court.  I wasn't
22   aware that we didn't all have the same materials that we
23   were working with.
24        We don't generate restitution requests.  The United
25   States is not responsible for that.  We received the

1   restitution requests from the victims' representatives.
2   Moca is represented by Jones Day and April is represented by
3   Restore the Child, PLLC, two law firms that do a lot of work
4   in this area of law.  I explained to them -- certainly,
5   Jones Day I recall saying, "You're -- you're way after when
6   we got all the other restitution submissions."  And I asked
7   him to address that in his letter to the Court explaining
8   why he was late.
9              THE COURT:  Well, I didn't get it, so --
10             MS. WHITE:  And so I apologize, Your Honor.  I
11  thought that you had received that.  He certainly did write
12  a cover letter explaining the delay in notification.  But we
13  did provide it to defense counsel on June 20th.  I'm in the
14  position of being the messenger in this one.  We receive it
15  from the victims and we pass it forward.
16      I would tell the Court that mind-numbing is a stunning
17  way to describe these victims and their submissions to the
18  Court about the pain and suffering that they have endured.
19  Obviously, their first substantial pain and suffering came
20  from their sexual abuse itself at the hands of their initial
21  offenders.  And those individuals were presumably punished
22  in a different court of law.  But each of those submissions
23  through their psychological evaluations, their victim impact
24  statements, their doctor reports, they all tell the Court in
25  different ways this:  The defendant is part of the trade

1  that continues their embarrassment, abuse and humiliation.
2  If people like Raymond Dugan would stop looking at and
3  collecting Moca's images, she wouldn't have to deal with
4  this.  She could get some closure.  And that goes for all
5  five victims.  It never ends because those children never
6  truly heal because each defendant, including Mr. Dugan, who
7  chooses to take those images and look at them and use them
8  for their sexual pleasure, exploits that child once again.
9  And that is why we are here.  So I would take umbrage with
10 the use of the term mind-numbing.
11         THE COURT:  Now, I hope you won't take too much
12 umbrage to the fact that I find that the courts have been
13 less than clear in the way they explain they calculate this
14 or the principles to which they apply individual cases.  And
15 for this Court to find a common thread or bright lines for
16 making these determinations is frustrating.
17         MS. WHITE:  It's very challenging, Your Honor.  I
18 agree with what you're saying.  I recognize that there's no
19 formula.  There's no real direction, no real guidance.
20     But what I'll say Ms. Schles is recommending is that
21 all of the victims get together and decide the defendant's
22 relative culpability in this particular case.  That's not
23 reasonable or feasible.  And because the child in the
24 Aprilblonde series -- or no -- I'm sorry.  Because Jenny is
25 only asking for no less than 3,000 and he had a 113 images,

1  her grace in only asking for that amount shouldn't detract
2  from someone like Aprilblonde asking for more.  And so the
3  defendant's idea that there's some comparative analysis that
4  goes into restitution --
5          THE COURT:  Yeah, I have no idea.  I have no idea
6  how to make calculable the incalculable damages that are
7  inflicted.  In any particular case, one image of one
8  individual child could cause damages that far exceed that of
9  another child where there were a thousand images.  There's
10 no way that this Court has seen in the case law, nor have I
11 experienced something that would tell me, well, this is --
12 this is a good way to do it, Judge.  I have always been
13 dubious of the attempt by the Sentencing Commission and
14 others to link length of sentences, restitution amounts and
15 everything else to the number of images.  It's some
16 indication -- where brutalization of children have occurred,
17 it's some indication of the damages.  And in an individual
18 case it is relevant to determine that.  But I agree with
19 you.  There's no way that I can compare the damage of one
20 child to another readily by counting photographs.
21         MS. WHITE:  I agree with the Court, Your Honor.  I
22 think about Maureen.  And I believe it's Maureen.  She's one
23 of the victims in this case.  She didn't find out there were
24 photographs until three years ago.  So after she had healed
25 from the sexual abuse -- she's almost the perfect case to

1  talk about here because she presumably healed.  She grew up.
2  She grew on.  She established a life.  And then all of the
3  sudden in 2020, she finds out there are these images and
4  they are all over the Internet.  My goodness.  That's a
5  whole new and ripped off Band-Aid of hurt and anger and pain
6  that just happened in the last three years and the
7  defendant's one of those directly responsible for it.
8         So I may be preaching to the choir a bit, Your Honor.
9  I feel like these children -- and some of them are grown-ups
10 -- they just deserve the best of the wisdom the Court can
11 give them.  But I know that Your Honor will look at what
12 they've submitted and obviously will supplement what hadn't
13 made its way to you.  But you'll make a reasoned decision
14 that is not simply this.  The defendant wants you to say,
15 Mr. Schles wants you to say, there isn't enough information
16 to agree to anything but the bare minimum that the law
17 requires.  Your Honor, if you came back at the end of your
18 analysis and you said, Mrs. White, I'm only awarding $3,000
19 for each child, I would respect that because I know that you
20 put the effort and the analysis into looking at what these
21 children went through.  But I would ask the Court not to
22 adopt defense counsel's position, which is simply there
23 isn't enough information.  Because we've given him
24 everything that we have and everything that any court I know
25 of in the country has to consider.  And so if that's not

1  enough, I don't know what would be.

2          MR. SCHLES:  Your Honor, may I respond?

3          THE COURT:  Sure.

4          MR. SCHLES:  I think we can all see the conundrum

5  here.  But you can't come into court and go, well, the

6  evidence is difficult to gather and present, therefore, we

7  don't need to gather and present evidence.  Courts are based

8  on evidence.  We have to have evidence.  They have

9  established -- and I believe I'm not arguing -- that the

10 three women originally presented were victims.

11      They then have the next burden of showing by a

12 preponderance of the evidence that that person's individual

13 measure of damages proximately caused by my specific client,

14 Mr. Dugan, exceeds the minimum of $3,000.  They have utterly

15 failed to even attempt that.  If they had presented some

16 methodology, I might be able -- you know, it's kind of my

17 job to dissect it and critique it.  They haven't even done

18 that.  They just said, "Here's the request, pay them what

19 they've asked for."  That's all we have except it's piled

20 into, you know, a three-inch thick binder.

21         THE COURT:  Well, both of your arguments are

22 founded in case law.  And I don't -- I think I share the

23 Government's skepticism about one of them.  The Supreme

24 Court says that if I can't look at the exact causal

25 connection and make a determination as to damages in that

1   way, then I should order restitution in an amount that
2   comports with the defendant's relative role in the causal
3   process.  That's very difficult.  I don't even -- it boggles
4   my mind --
5               MR. SCHLES:  Your Honor, if I may --
6               THE COURT:  -- if I were to do that.
7               MR. SCHLES:  Ms. White's example of the one that
8   just came to light indicates another issue.  Should my
9   client's pro rata share of the damages be greater because we
10  happen to come before or after the random of one specific
11  finding?  And I think we can all agree -- I mean, nobody's
12  saying the statute was designed in a way that's easy to
13  administer.  I mean, it could have said, you know, just a
14  set amount for every image.  There's millions of things that
15  Congress could have done that it didn't do.
16       And then the Supreme Court in *Paroline* gives additional
17  guidance.  And you see the courts following *Paroline* saying,
18  well, we don't know how to do *Paroline*.  But if you don't
19  know how to do anything, you can't use the lack of knowing
20  how to do it to increase the punishment of the defendant.  I
21  mean, that's basic, you know, due process in the United
22  States.
23              THE COURT:  I certainly think that the times I've
24  been subjected to viewing child pornography that the victims
25  of that pornography could not be fairly compensated by --

1            MR. SCHLES: Any amount.

2            THE COURT: -- any amount of money. So it is an
3    artificial construct. And much of the law does have these
4    conundrums. I think that Congress -- I shouldn't say that
5    Congress copped out, but I will have to think of another
6    word that works, by putting that $3,000 minimum in there.
7    Because there just isn't a way in an individual case without
8    traumatizing and re-traumatizing the victim, having
9    miniature trials over restitution in every case.

10           Frankly, I think that -- at the risk of saying
11   something that may get me reversed, I think that whatever
12   this defendant can pay to these people to whom he
13   contributed damages, he should pay. The damages are large.
14   But as defense states persuasively, normally we have proof
15   when we come -- with damages.

16           So it -- I'm not real -- I'm not real confident of my
17   ability to do justice in these cases. I truly am not. I
18   can follow the statutory scheme, but I don't -- it's sort of
19   like somebody killing your child. There is no justice, is
20   there, for the parent? There's no justice for these kids.

21           Well, what the Government has told me is I have
22   information and the probation officer has information that I
23   haven't looked at.

24           MS. WHITE: That's correct, Your Honor. And we'll
25   get that to you this afternoon. And if the Court wanted to

1  take a brief recess, I could try to send it over now.  I
2  have it here with me.
3       We are asking that the Court consider all five victims
4  because they all submitted requests prior to restitution
5  being determined in this case.
6       As for Mr. Schles' statement that we didn't bring
7  anything to support it, well, I think the documentation
8  that's outlined in the chart that was attached to my
9  memorandum refutes that to the best that we can.  And I can
10 only do the best that I can to --
11          THE COURT:  Well, I'm just going to do the best I
12 can with what you all gave me.  And it's not going to be
13 adequate.  It's just that simple.  We're just going to do
14 the best we can.
15      Do you want another hearing or do you want me to take
16 what I've got and enter an order?
17          MR. SCHLES:  Your Honor, I don't know that I can
18 do anything but repeat the same thing over and over ad
19 infinitum.
20          MS. WHITE:  Your Honor, we're fine with the Court
21 taking it under advisement and submitting an order.
22          THE COURT:  All right.  I still need the
23 documentation.  But you said probation staff has it?
24          MS. WHITE:  Yes.  And I will work with your clerk
25 after the Court is in recess to make sure that our files all

1  match.
2         THE COURT:  Okay.  Well, make sure Mr. Schles has
3  everything we have.
4         MS. WHITE:  We are on the same page with that.  I
5  had verified that in June.
6         MR. SCHLES:  If you find that what you sent me in
7  -- or your assistant sent me last week is not, you can just
8  send me what --
9         MS. WHITE:  We'll look at it after the Court
10 adjourns and we can resolve it right now.
11        THE COURT:  Sure.  Yeah.  I have able counsel.
12 I'll do the best I can.  I won't be happy with the result
13 and there you go.
14        The Court was joking about a most esteemed
15 colleague whose representation for thoroughness when it
16 comes to matters of restitution is legendary.  I will just
17 leave it at that.  Is that fair?  You don't have to answer
18 that.
19        MS. WHITE:  Thank you for your time.
20        THE COURT:  Anything else?
21        MR. SCHLES:  No, Your Honor.
22        MS. WHITE:  No, Your Honor.
23        THE COURT:  Thank you.  All right.  Court's
24 adjourned.
25        (Proceedings concluded at 1:50 p.m., July 17, 2023.)

```
 1   CERTIFICATION:
 2         I, Amanda J. Pickens, Federal Official Court Reporter,
 3   certify that the foregoing is a true and correct transcript
 4   from the record of proceedings in the above-entitled matters
 5   as reported on July 17, 2023.
 6
 7         s/Amanda J. Pickens, CCR, RPR    July 28th, 2023
 8         Amanda J. Pickens, CCR, RPR
             Federal Official Court Reporter
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```